IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| ROSEMARY COSTA, | ) | Civil No. 3:10-CV-00786-JE |
| | ) | |
| Plaintiff, | ) | FINDINGS AND |
| | ) | RECOMMENDATION |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

Tim D. Wilborn
Wilborn Law Office, P.C.
P.O. Box 2768
Oregon City, OR 97045

Attorney for Plaintiff

Dwight C. Holton, U.S. Attorney
Adrian Brown, Asst. U.S. Attorney
District of Oregon
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902

FINDINGS AND RECOMMENDATION - 1

Gerald Hill
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

JELDERKS, Magistrate Judge:

Plaintiff Rosemary Costa brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security (the Commissioner)

denying her application for Disability Insurance Benefits.  Plaintiff seeks an Order remanding

this action to the Social Security Administration (the Agency) for an award of benefits.

For the reasons set out below, the Commissioner's decision should be affirmed.

## Procedural Background

Plaintiff filed an application for Disability Insurance Benefits on September 26, 2006,

alleging that she had been unable to work since November 11, 2003, because of a back injury.[1]

She later alleged that her symptoms had worsened, and that she had additional impairments.

After her application for benefits had been denied initially and upon review, Plaintiff

timely requested and was granted a hearing before an Administrative Law Judge (ALJ).  ALJ

John Madden, Jr., issued a decision on December 2, 2008, finding that plaintiff was not disabled

---

[1]In his Findings of Fact in the decision at issue in this action, the ALJ stated that plaintiff
had not engaged in substantial gainful activity since the alleged onset date of her disability on
November 11, 2003.  That statement appears to have been made in error, because in his
discussion of the Findings, the ALJ stated that plaintiff had engaged in substantial gainful
activity through December 22, 2004.  Plaintiff now cites that latter date as the date of the onset
of her alleged disability, and in this Findings and Recommendation that is assumed to be the date
of Plaintiff's alleged onset of disability.

within the meaning of the Social Security Act (the Act).  On May 14, 2009, following Plaintiff's

timely request for review of that decision, the Appeals Council remanded the case for a second

hearing.

Following Plaintiff's second hearing, on February 19, 2010, ALJ Michael Gibson issued

a decision finding that plaintiff was not disabled within the meaning of the Act.  That decision

became the final decision of the Commissioner on May 12, 2010, when the Appeals Council

denied Plaintiff's timely request for review.  In the present action, plaintiff seeks review of that

decision.

**Disability Analysis**

The ALJ engages in a five-step sequential inquiry to determine whether a claimant is

disabled within the meaning of the Act.  20 C.F.R. §§ 404.1520, 416.920.  Below is a summary

of the five steps, which also are described in Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir.

1999).

Step One.  The Commissioner determines whether the claimant is engaged in substantial

gainful activity (SGA).  A claimant engaged in such activity is not disabled.  If the claimant is

not engaged in substantial gainful activity, the Commissioner proceeds to evaluate the claimant's

case under Step Two.  20 C.F.R. § 404.1520(b).

Step Two.  The Commissioner determines whether the claimant has one or more severe

impairments.  A claimant who does not have such an impairment is not disabled.  If the claimant

has a severe impairment, the Commissioner proceeds to evaluate claimant's case under Step

Three.  20 C.F.R. § 404.1520©.

FINDINGS AND RECOMMENDATION - 3

Step Three.  Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one of the impairments listed in the SSA regulations, 20 C.F.R. Part 404, Subpart P, Appendix 1.  A claimant who has such an impairment is disabled.  If the claimant's impairment does not meet or equal one listed in the regulations, the Commissioner's evaluation of the claimant's case proceeds under Step Four.  20 C.F.R. § 404.1520(d).

Step Four.  The Commissioner determines whether the  claimant is able to perform work he or she has done in the past.  A claimant who can perform past relevant work is not disabled.  If the claimant demonstrates he or she cannot do work performed in the past, the Commissioner's evaluation of the claimant's case proceeds under Step Five.  20 C.F.R. § 404.1520(e).

Step Five.  The Commissioner determines whether the claimant is able to do any other work.  A claimant who cannot perform other work is disabled.  If the Commissioner finds that the claimant is able to do other work, the Commissioner must show that a significant number of jobs exist in the national economy that the claimant can do.  The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2.  If the Commissioner demonstrates that a significant number of jobs exist in the national economy that the claimant can do, the claimant is not disabled.  If the Commissioner does not meet this burden, the claimant is disabled.  20 C.F.R. § 404.1520(f)(1).

At Steps One through Four, the burden of proof is on the claimant.  Tackett, 180 F.3d at 1098.  At Step Five, the burden shifts to the Commissioner to show that the claimant can perform jobs that exist in significant numbers in the national economy.  Id.

**Factual Background**

Plaintiff was born on December, 1952, and was 55 years old at the time of her first hearing before an ALJ.  She is a high school graduate, and has past relevant work experience as a salesperson, bus driver, cafeteria counter attendant, child monitor, truck driver, and garment sorter.

**Hearing Testimony**

At the second hearing before an ALJ on December 8, 2009, Plaintiff testified as follows:

Plaintiff is 5 feet tall and weighs 200 pounds.  She is unable to sit for long periods, and needs help grocery shopping.  Because of arthritis in her thumbs, she cannot grip objects and has difficulty opening jars.  Her pain level is about 5 on a 10 point scale when she takes her pain medication.  Because she has only one kidney, Plaintiff cannot take certain pain medications.

Plaintiff is supposed to use a cane for walking, but does not do so because it hurts her hands.  She can walk "maybe a short block," can sit for "maybe 45 minutes," and does not think she could stand for the 45 minutes to an hour needed to cook a whole meal.

Plaintiff cannot shave her legs because of difficulty bending, and has right hip pain and right leg numbness that has caused her to fall.  She has fallen twice on her porch stairs, and broke her nose in another fall.

Plaintiff sometimes feels better, but when her pain flares, she must sit down or she will pass out.  These pain flares occur two or three times a day, and can be triggered by something as minor as getting out a chair the wrong way or walking to turn on her stereo.  Pain makes it difficult for Plaintiff to concentrate and read, and tasks that formerly took an hour now take her two days to complete.

**Lay Witness Evidence**

Richard Costa, Plaintiff's husband, completed a questionnaire regarding plaintiff's activities. He stated that Plaintiff cannot bend or lift, needs help with grooming and hygiene, cannot lift heavy pots from the stove, has trouble leaning over to put items in the oven, cannot sit for long periods, and needs help with household chores. Mr. Costa indicated that Plaintiff could lift less than 20 pounds, and could not sit, stand, or walk for more than about 30 minutes at a time.

**Vocational Expert's Testimony**

The ALJ posed a hypothetical to the VE describing an individual with Plaintiff's age, education, and experience, who was limited to light work, could climb ramps or stairs, balance and kneel frequently, and was able to assume other postures only occasionally. The VE testified that such an individual could perform cafeteria worker, sorter, and retail sales jobs as described in the Dictionary of Occupational Titles (DOT). When the ALJ added a limitation to frequent handling and fingering, the VE testified that all three of those positions would still be appropriate.

The ALJ next added a limitation to occasional fingering, the VE responded that the retail sales and sorter positions would still be appropriate. When the ALJ added a limitation to occasional handling, the VE opined that all three of the positions noted above would be ruled out.

The ALJ next asked the VE to consider an individual who was limited to sedentary work, with the same postural limitations set out above, and a limitation to frequent handling and

FINDINGS AND RECOMMENDATION - 6

occasional fingering.  In response, the VE testified that these limitations would rule out all of Plaintiff's past relevant work.

Counsel representing Plaintiff at the hearing asked the VE to consider an individual with a moderate limitation in concentration, persistence, and pace that resulted in a 20% reduction in productivity compared to an average worker.  The VE testified that such a limitation would eliminate competitive employment, as would two absences per month.  The VE also testified that an individual who had the pain issues that Plaintiff described would not be able to perform full-time work on a regular and continuing basis.


**Medical Record**

Plaintiff injured her back in a work-related accident in November, 2003.  X-rays of Plaintiff's lumbar spine taken on November 21, 2003, showed lumbar spondylosis with facet hypertrophy at the lower 2 lumbar levels, and no evidence of fracture "or other acute findings." An MRI taken on December 29, 2003, showed a small disc protrusion at L5-S1 on the right and a small central protrusion at T12-L1.

Beginning on January 8, 2004, Plaintiff had physical therapy for lower back and right hip pain.  Physical therapist Kyle Fleischmann noted that the initial evaluation showed that Plaintiff had decreased range of motion in her hip and lumbar spine, decreased sensation in a L5-S1 distribution on the right and a positive slump test and Lasegue test, and lumbar compression test on the right.  Plaintiff had marked pain with lumbar rotation, marked hypersensitivity, and muscle spasm at L3-5 on the right.  Fleischmann noted that, though plaintiff stated that she had a "fracture" of her spine, this was not indicated in the referral from a physician, and indicated that

Plaintiff's "signs and symptoms" were consistent with the physician's diagnosis of lumbar sprain and radiculitis.

Plaintiff experienced fair progress with physical therapy. On March 4, 2004, Fleischmann noted that Plaintiff was being discharged from physical therapy with some reduction in the pain she experienced, but indicated that Plaintiff continued to have difficulty with prolonged sitting, standing, and walking. He opined that Plaintiff could walk one quarter of a mile, could sit for up to one hour, and could stand for about 30 minutes. Fleischmann reported that plaintiff had lost 7 days of work because of her condition, and indicated that her work status was "return to work with modification."

Dr. Linda Carroll, Plaintiff's treating physician, examined Plaintiff on April 23, 2004. Dr. Carroll noted that plaintiff reported pain from a level of 3 to 8 out of 10, and reported worsening pain with prolonged sitting or standing, walking, lying down, bending, squatting, or daily activities. She noted that Plaintiff had decreased sensation to pinprick in the right leg, and a positive result for Gillet's maneuver for SI joint hypomobility on the right. A FABER test was positive on the right for reproduction of back pain. FAD and compression tests were also positive on the right for reproduction of back pain. Dr. Carroll opined that Plaintiff's problems included lumbar sprain/strain, disc protrusion, and SI joint dysfunction. She administered a Toradol injection, recommended further physical therapy, and opined that Plaintiff should lift no more than 10 pounds and carry no more than 20 pounds.

Plaintiff began a second round of physical therapy sessions on May 11, 2004. In his initial assessment report to Dr. Carroll, Physical Therapist Wes Rau noted that Plaintiff had significant pelvic obliquity with the left side elevated, and had reduced range of motion in her lumbar spine in the right sacroiliac joint. He also noted positive Gillet's, FABER, and fade tests

on the right.  Rau opined that Plaintiff's principal problems were very poor mobility of the right

sacroiliac joint and pelvic obliquity.

During the next few months, Plaintiff had physical therapy sessions two to three times

per week.  She reported some lessening of her hip pain, but little improvement in her lower back

pain.  On July 13, 2004, Plaintiff reported that she had been doing her home exercises, but did

not think that they were helping much to reduce her pain.

In chart notes dated July 13, 2004, Dr. Carroll noted that plaintiff reported some

improvement in her right hip pain with physical therapy and use of an SI belt.  Plaintiff reported

that she was working 20 hours per week, and that she was unable to get down on the floor to

play with the children she was looking after at work.  She also reported that she had weighed 150

pounds before the accident, which would  reflect a 50 pound weight gain in the course of 6

months.  Dr. Carroll recommended a continuation of Plaintiff's restriction to light duty work,

which included a 10 pound lifting restriction and 20 pound carrying restriction.  She listed

Plaintiff's problems as lumbar strain/sprain, "Disk protrusion by MRI," and SI joint dysfunction.

During a physical therapy session held on July 30, 2004, plaintiff reported that she was

making progress, could walk to and from her mailbox without any increase in pain, and could

walk approximately 1/4 mile.

During August, 2004, plaintiff reported that she had good days and bad days, and on July

17, 2004, she told Dr. Carroll that she could not do much activity when her symptoms flared.  A

SPECT bone scan of Plaintiff's lumbar spine on July 19, 2004 showed mildly increased tracer

uptake within the facet joints at L4-5 and L5-S1 bilaterally, which was noted as consistent with

mild facet arthrosis at those levels.

On August 27, 2004, Physical Therapist Novelli noted that Plaintiff had fallen and broken her nose and suffered two black eyes, and had pain in her right shoulder, thigh, and hip. On August 31, 2004, Plaintiff told Novelli that she had walked around her barn two times the day before, and had aching pain in her hip. The next day, she reported constant pain in her low back and hip, ranging from 3 to 10 on a 10 point scale. Novelli noted that her exercise tolerance seemed to be increasing.

On September 14, 2004, Dr. Carroll noted that Plaintiff was "quite distressed" by her pain, but acknowledged that she was "better than she was just after the accident." Plaintiff wanted to work more than the 15 hours per week she said she was scheduled, but her employer would not increase her hours. She reported that bilateral facet injections she received two weeks earlier had decreased her pain slightly for about a week, but the pain had subsequently worsened.

On October 1, 2004, Dr. Carroll noted that trigger point injections administered in the PSIS region had decreased plaintiff's sharp pain, but had not restored her ability to do her normal activities. Plaintiff reported that she wanted to work more than the 15-20 hours per week she was scheduled.

On October 19, 2004, Plaintiff told Dr. Carroll that she was doing "fairly well," that she had not cried since she had started taking Lexapro, and that she was relatively pain free except for an "underlying dull ache" unless she over exerted herself.

Dr. Carroll administered another trigger point injection to Plaintiff on November 23, 2004. On December 14, 2004, Plaintiff reported that the injection continued to be beneficial, and that she continued to experience pain relief.

On January 25, 2005, Plaintiff told Dr. Carroll that she experienced a dull ache "all the time," but that she was "not having any bad pain." She also reported that she had been "fired

from Fred Meyers" because she had been scheduled for work while she was away on vacation, and had not come to work.  Plaintiff told Dr. Carroll that she would be "talking to her lawyer about this issue."

On February 15, 2005, Plaintiff told Dr. Carroll that she continued to have lower back pain with prolonged standing, and had sharp pain in her right hip.  She was walking about 3/4 of a mile a day.  On March 1, 2005, Plaintiff reported that she was able to walk a mile, and said she felt good about that.

On March 29, 2005, Dr. Carroll noted that plaintiff continued to do well on her medication regimen, and could bend a little further than on her previous examination.

On April 26, 2005, Dr. Carroll noted that Plaintiff reported that she had undergone an independent medical exam a short time earlier, and that she experienced significant pain for the following week.

On May 31, 2005, Plaintiff reported that she was very discouraged because "no one would hire her because of her back pain."  Plaintiff said that prospective employers wanted her to be able to lift 40 pounds or sit or stand all day, which she could not do.  Dr. Carroll suggested trial of a TENS unit, and one was provided to Plaintiff on June 1, 2005.

On June 28, 2005, Plaintiff reported that the TENS unit allowed her to walk or stand for prolonged periods.  She also told Dr. Carroll that she had attended a hearing concerning her application for unemployment benefits, and benefits were denied.  Dr. Carroll stated that, except for her recent experience with the TENS unit, Plaintiff had tried "lots of treatment without any good effect . . . ."

On July 26, 2005, Plaintiff told Dr. Carroll that she had started doing new back exercises and was doing better.  Dr. Carroll noted that Plaintiff's range of motion had improved.

On January 3, 2006, Dr. Carroll indicated that there had been no significant change in Plaintiff's condition. On February 1, 2006, Dr. Carroll opined that Plaintiff could return to work 4 hours per day performing restricted activities.

On April 4, 2006, Physical Therapist Fleischmann examined Plaintiff and evaluated her physical capacity. In his summary, Fleischmann opined that Plaintiff could perform light duty work, as described in the Dictionary of Occupational Titles (DOT) during an 8-hour work day. On April 24, 2006, Plaintiff told Dr. Carroll that she had experienced significant pain following Fleischmann's evaluation, and could "hardly move" for two days after the examination.

In chart notes dated June 20, 2006, Dr. Carroll opined that Plaintiff "might be capable of some minimum wage job," but would need training "in order to compete in the work place." Plaintiff reported that her pain level varied from 3 to 10 on a 10 point scale, depending on her activities. She said she was walking a mile a day.

On October 10, 2006, Plaintiff reported that she had good days and bad days, and had "no particular change in her symptoms." She also stated that her right leg sometimes felt as if it would not support her weight. Dr. Carroll opined that Plaintiff had "diligently tried to find a job," but with the "waxing and waning of her symptoms," had been unable to find work she could perform on a consistent basis.

On March 3, 2007, Plaintiff told Dr. Carroll that her symptoms were worsening, and that she needed to take more pain medication. Plaintiff reported that she was unable to stand after a long car ride, and had experienced swelling in both legs. Dr. Carroll opined that Plaintiff's pain could be caused by progression of degenerative disc disease and posterior facet syndrom.

On June 12, 2007, Dr. Carroll indicated that Plaintiff's pain continued to wax and wane, and opined that a home traction device might be helpful. On December 17, 2007, Plaintiff reported worsening pain in her lower back and numbness and burning in her right leg, and told

Dr. Carroll that she could not shop at a store for any length of time.  Dr. Carroll suspected a

worsening of a disc protrusion noted in 2003, and ordered another MRI.

    An MRI taken on January 29, 2008, showed progressive L4-5 facet arthrosis

characterized by a mild increase in hypertrophy,  reactive marrow edema, and a slight increase in

Plaintiff's very mild degenerative spondylolisthesis.  The protrusions seen in an earlier MRI at

T12-L1 and L5-S1 had resolved.  Based upon her review of the results of the MRI, Dr. Carroll

opined that Plaintiff's worsening symptoms could be related to worsening lumbar spondylosis or

SI joint dysfunction.

    On March 31, 2008, Plaintiff reported that she sometimes had shaking in her legs and

pain down her left leg, which was aggravated by prolonged sitting.  Plaintiff reported that her

pain ranged from 3-4 to 10 on a 10 point scale, and that Cymbalta had been "extremely helpful in

her ability to cope with pain."

    On June 11, 2008, Dr. Carroll noted that Plaintiff had purchased a cane because she

feared falling.  Dr. Carroll renewed her handicapped parking permit.

    X-rays taken on December 5, 2008, showed moderately advanced osteoarthritic changes

in the first joint of Plaintiff's thumbs.

    At the request of Plaintiff's counsel, in April, 2009, Dr. Carroll completed an evaluation

of Plaintiff's condition.  In form, dated April 9, 2009, Dr. Carroll opined that Plaintiff could not

perform medium, light, or sedentary work, even if an option to alternate sitting or standing were

provided.  She opined that Plaintiff would have marked limitations in her ability to perform

activities within a schedule, maintain regular attendance and be punctual within customary

tolerances, complete a normal workday and workweek without interruptions from medically

based symptoms, and to perform at a consistent pace without an unreasonable number and length

of rest periods.  Dr. Carroll further opined that Plaintiff could stand or walk for about 5 minutes at a time and for about 2 hours total during an 8 hour work day, and that her deficiencies in concentration, persistence, and pace were often severe enough to result in failure to complete tasks in a timely manner.  She opined that Plaintiff's medical impairments would cause her to miss work 5 or more times per month, and that she probably could not work even one day per month.  Dr. Carroll opined that plaintiff could not perform twisting or turning maneuvers with her hand, that she could handle for 5 minutes at a time for a total of 90 minutes in a day, and that she could not perform fingering.  She wrote "unable to work with hands."  Dr. Carroll stated that the limitations she assessed had existed at the level she described since November, 2003.

On May 1, 2009, Plaintiff told Dr. Carroll that her pain had worsened, and was 10 on a 10 point scale at the best of times, and 15 on a 10 point scale at other times.  She said that she had fallen several times, and that her legs went numb if she sat for too long.  Dr. Carroll noted a decrease in the range of motion in Plaintiff's lumbar spine and pain with any movement of the right leg.  Dr. Carroll characterized the arthritis in Plaintiff's thumbs as "problematic," and opined that this would interfere with her ability to handle objects.  She added that Plaintiff's functional status had decreased significantly, and opined that Plaintiff could not "work on any consistent/sustainable basis."


**ALJ's Decision**

The ALJ first found that Plaintiff met the requirements for insured status through December 31, 2009, and that she had not engaged in substantial gainful activity since December 22, 2004.


FINDINGS AND RECOMMENDATION - 14

At the second step of his analysis, the ALJ found that Plaintiff's lumbar degenerative disc disease and bilateral thumb arthritis were "severe" impairments.

At the third step, the ALJ found that, through her date last insured, Plaintiff did not have an impairment or combination of impairments that medically met or equaled one of the per se disabling impairments set out in "the Listings," 20 C.F.R. pt. 404, subpt. P, app. 1.

The ALJ next assessed Plaintiff's residual functional capacity. He found that, through her date last insured, Plaintiff retained the capacity to perform light work as described in Social Security Regulations, except that she could only occasionally climb ladders, ropes, or scaffolds, stoop, crouch, and crawl, and could frequently climb ramps and stairs, balance, kneel, and handle and finger bilaterally. The ALJ found that Plaintiff's descriptions of her symptoms were not credible to the extent that they were inconsistent with this assessment.

At the fourth step of his disability analysis, the ALJ found that Plaintiff could perform her past relevant work as a salesperson and garment sorter. Accordingly, he found that she was not disabled within the meaning of the Act any time through her date last insured.

**Standard of Review**

A claimant is disabled if he or she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996). The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); see also Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if "the evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

## Discussion

Plaintiff contends that the ALJ erred in concluding that she could perform past relevant work as a salesperson and garment sorter even though she could perform only some of the duties of those positions, improperly rejected the opinions of treating and examining doctors, improperly rejected her testimony, improperly rejected lay witness statements, and posed an invalid hypothetical.

### 1. Salesperson and Garment Sorter positions as past relevant work

Plaintiff contends that the ALJ erred in finding that she could perform past relevant work because he based that conclusion on her ability to perform only some of the functions required by past work which the VE had characterized as salesperson and garment sorter positions. She argues that her past work at the Salvation Army and the Humane Society included more physically demanding duties than those required by salesperson and garment sorter positions,

and contends that the ALJ erred in finding that she could perform past relevant work when she could perform only the "least demanding" aspects of that work.

This argument fails. As the Commissioner correctly notes, in order to be found disabled, Plaintiff was required to show that she lacked the residual functional capacity to perform her past relevant work both as she had performed it, and as it is generally performed in the national economy. See 20 C.F.R. § 404.1560(b)(2). A VE is qualified to testify about the demands of a claimant's past relevant work both as it was actually performed, and as it is generally performed in the national economy. 20 C.F.R. § 404.1560(c)(2). Here, the VE testified that Plaintiff had worked as a retail clerk as defined in the DOT, and that the residual functional capacity assessed by the ALJ would allow Plaintiff to return to this light, semi-skilled work as it is generally performed n the national economy. That testimony constituted substantial evidence supporting the ALJ's finding that Plaintiff could perform past relevant retail clerking work as generally performed in the national economy. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005).

2. **ALJ's assessment of Dr. Carroll's opinion**

Because treating physicians have a greater opportunity to know and observe their patients, their opinions are entitled to greater weight than the opinions of other physicians. Rodriguez v. Bowen, 876 F.2d 759, 761-62 (9th Cir. 1989). An ALJ must support the rejection of a treating physician's opinion with "findings setting forth specific and legitimate reasons for doing so that are based upon substantial evidence in the record." Magallenes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). An ALJ must provide clear and convincing reasons for rejecting

the opinion of a treating physician that is not contradicted by another doctor.  Lester v. Chater,

81 F.2d 821, 830-31 (9th Cir. 1995).

As noted above, Dr. Carroll, Plaintiff's treating physician, opined that Plaintiff could not

perform sedentary, light, or medium work, even with the option to alternate sitting and standing.

She opined that Plaintiff would have marked limitations in her ability to perform activities within

a schedule, maintain regular attendance and be punctual within customary tolerances, complete a

normal workday and workweek without interruptions from medically based symptoms, and

perform at a consistent pace without an unreasonable number and length of rest periods.  Dr.

Carroll opined that Plaintiff could stand or walk for only about 5 minutes at a time, for a total of

about 2 hours in an 8 hour work day, and that Plaintiff's deficiencies in concentration,

persistence, and pace would often result in failure to complete tasks in a timely manner.  She

further opined that Plaintiff's impairments would cause Plaintiff to miss work 5 times a month,

and that Plaintiff probably could not work even one day per month.  Dr. Carroll opined that

Plaintiff could not perform twisting or turning maneuvers with her hands, could not perform and

could handle for 5 minutes at a time for a total of 90 minutes.  She wrote that Plaintiff was

"unable to work with hands."

The ALJ gave Dr. Carroll's opinion "no weight," in part because of what he

characterized as an internal inconsistency between her opinion that Plaintiff was "not

significantly limited" in her ability to maintain attention and concentration, and her opinion that

Plaintiff's deficiencies in concentration, persistence, or pace were often severe enough to result

in failure to complete tasks in a timely manner.

Plaintiff correctly asserts that these two assessments are not necessarily inconsistent,

because the former addresses only attention and concentration, while the latter includes problems

FINDINGS AND RECOMMENDATION - 18

of persistence and pace that may be caused by factors other than limitations in attention and

concentration.  I also agree with Plaintiff's assertion that a physical therapist is not considered a

"doctor" for the purposes of determining whether a treating physician's opinion is contradicted

by that of another doctor, and the opinions of non-examining physicians are not, by themselves,

"substantial evidence" that may support rejection of a treating physician's opinion.  See, e.g.,

Lester, 81 F.3d at 830-31.  Accordingly, if the "inconsistency" he cited was the ALJ's only basis

for rejecting Dr. Carroll's opinion as to the severity and effects of Plaintiff's impairments, I

would conclude that the ALJ had not provided clear and convincing reasons, supported by

substantial evidence in the record, for doing so.

      However, the ALJ supported his rejection of Dr. Carroll's opinion with other reasons that

were adequate.  These included, most significantly, the ALJ's observation that Dr. Carroll's

opinion was not consistent with her "history of treating claimant," as discussed earlier in his

decision.  Dr. Carroll's opinion as set out in the form supplied by Plaintiff's counsel describes a

severity of impairment that is markedly more severe than that reflected in her record of

Plaintiff's treatment over a period of several years.  For example, Dr. Carroll opined that since

November, 2003,  Plaintiff had been impaired "at the assessed" disabling level.  This conclusion

is at odds with treatment records that showed Plaintiff continued to work until late December,

2004.  Dr. Carroll's chart notes indicate that Plaintiff wanted to be scheduled for more hours

during that year, and that Plaintiff was actively seeking employment well after she was

terminated from her last employment.  Though Dr. Carroll's chart notes indicated that Plaintiff

often reported that pain prevented her from doing some activities, they do not reflect the severity

of impairment indicated in Dr. Carroll's ultimate evaluation.  Instead, the notes reflect a "waxing

and waning" of symptoms, and indicate that Plaintiff responded well to some treatments and

engaged in activities that were inconsistent with the severe limitations described in Dr. Carroll's ultimate evaluation.

The ALJ also correctly noted that Dr. Carroll's opinion as to the severity of Plaintiff's impairments was based, at least in part, on plaintiff's "self reporting." A careful review of Dr. Carroll's chart notes supports the conclusion that Dr. Carroll based her ultimate opinion largely on Plaintiff's description of her pain and limitations. As discussed below, the ALJ adequately supported his conclusion that Plaintiff's statements concerning the severity of her symptoms and impairments were not wholly credible. This is significant, because an ALJ may reject a treating physician's opinion that is largely based upon a claimant's self-reports that are properly discounted. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008).

The ALJ immediately followed his discussion of his reasons for rejecting Dr. Carroll's opinion with his summary of the results of a Physical Capacity Evaluation performed by Kyle Fleischmann, PT, MS, OCS, CSCS. Mr. Fleischmann evaluated Plaintiff's impairments and limitations as far less severe than those described by Dr. Carroll, and assessed Plaintiff with none of the manipulative limitation set out in her opinion. The ALJ stated that he "gave great weight" to Mr. Fleischmann's opinion "because it is most consistent with claimant's treatment history." Given its relationship to his discussion of Dr. Carroll's opinion and the reference to Plaintiff's treating history, the ALJ's discussion of Mr. Fleischmann's evaluation supports the rejection of Dr. Carroll's opinion. As noted above, the opinions of non-examining physicians do not provide "substantial evidence" to support rejection of a treating physician's opinion. However, I am satisfied that the ALJ could consider the physical therapist's objective physical evaluation in determining the weight he should give to Plaintiff's treating physician's opinion.

The ALJ supported his rejection of Dr. Carroll's opinion with clear and convincing reasons which were supported by substantial evidence in the record.

3. **ALJ's evaluation of Plaintiff's credibility**

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). If a claimant produces medical evidence of an underlying impairment, the ALJ may not discredit the claimant's testimony concerning the severity of symptoms merely because it is not supported by objective medical evidence. Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) citing Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1990)(en banc). If a claimant produces the requisite medical evidence and there is no evidence of malingering, an ALJ must provide specific, clear and convincing reasons, supported by substantial evidence, to support a determination that the claimant was not wholly credible. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); SSR 96-7p. If substantial evidence supports the ALJ's credibility determination, that determination must be upheld, even if some of the reasons cited by the ALJ are not correct. Carmickle v. Commissioner of Social Security, 533 F.3d 1155, 1162 (9th Cir. 2008).

An ALJ rejecting a claimant's testimony may not simply provide "general findings," but instead must identify the testimony that is not credible and the evidence that undermines the claimant's complaints. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). In addition, SSR 96-7 requires an ALJ to consider the entire record and to consider several factors, including the claimant's daily activities, medications taken and their effectiveness, treatment other than medication, measures other than treatment used to relieve pain or other symptoms, and "any

other factors concerning the individual's functional limitations and restrictions due to pain or

other symptoms."  An ALJ may support a determination that the claimant was not entirely

credible by identifying inconsistencies or contradictions between the claimant's complaints and

the claimant's activities of daily living.  Thomas, 278 F.3d at 958-59 (9th Cir. 2002).


Here, the ALJ found that plaintiff's impairments could reasonably be expected to cause

the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence, and

limiting effects of those symptoms were not credible to the extent that they were inconsistent

with his RFC assessment.

Because there was no affirmative evidence of malingering, the ALJ was required to

provide clear and convincing reasons, supported by substantial evidence in the record, for

concluding that Plaintiff's allegations were not wholly credible.  Plaintiff contends that the ALJ

failed to do so.  I disagree.  The ALJ cited a number of factors that supported his analysis of

Plaintiff's credibility.  He observed that "[t]he objective medical evidence generally does not

support [Plaintiff's] allegations at hearing."  The ALJ stated that "in addition to physical therapy

treatment notes," he had "especially considered claimant's treatment and reported symptoms

chronicled by Linda Carroll, M.D. . . ." A careful review of the  record supports that conclusion.

The ALJ also correctly noted that, though Plaintiff testified that her doctor discontinued her use

of Vicodin because of concern about its effects on her one kidney, the records indicated that her

doctor instead "wanted to get her off of over the counter Aleve, not prescription pain medicine,

because of its well known adverse effects and warning regarding kidney disease."  This

supported the ALJ's credibility determination, because a conservative course of pain treatment

FINDINGS AND RECOMMENDATION - 22

may indicate that a claimant's pain is not as severe as alleged.  Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

The ALJ's assertion that Plaintiff "has presented with allegations of more severe pain when seeking assistance in obtaining Disability benefits" is supported by the record, and supported his conclusion that Plaintiff's allegations concerning the severity of her pain and limitations were not wholly credible.  For example, when Plaintiff brought disability assessment forms for Dr. Carroll to complete on May 1, 2009, she described her pain as 10 on a 10 point scale on good days, and 15 on a 10 point scale on bad days.  These levels of reported pain were inconsistent with the pain levels Plaintiff more typically reported, and in assessing credibility, an ALJ may consider whether a claimant has exaggerated symptoms in order to obtain a benefit. See, Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001).

The ALJ stated that, contrary to Plaintiff's allegations at the hearing, objective medical evidence indicated "that claimant's pain level and mobility is significantly responsive to treatment." That observation is supported by substantial evidence in the medical record. The ALJ's noted that Plaintiff's treatment history indicated that medications were effective in relieving her pain, and that the medical record showed that Plaintiff had been able to walk up to a mile, improved with physical therapy, and was able to walk and stand for prolonged periods with the use of a TENS unit.  These observations are supported by medical evidence, and supported the ALJ's credibility assessment.  As the Commissioner notes, symptoms that are adequately controlled by treatment are not disabling.  E.g., Warre v. Commissioner of Social Security, 439 F.3d 1001, 1006 (9th Cir. 2006).

The ALJ also supported his credibility assessment by citing evidence that Plaintiff lacked employment because of the absence of available positions in her area rather than her inability to

perform the duties of any job.  He correctly noted that Plaintiff reported that there were "not any

[jobs]" where she lived, and that employers were looking for someone who could "lift 40

pounds, sit or stand all day long."  The ALJ reasonably concluded that Plaintiff acknowledged

that she in fact had the functional capacity to perform work activities, though she was unable to

find  a job in her area.  The ALJ's observation that Plaintiff was "not a reliable historian," and

that she "provided confusing and uncertain testimony . . . as to when she allegedly became

unable to perform light duty" is also supported by a review of the hearing transcript, and

supported his credibility determination.

The ALJ here provided clear and convincing reasons, supported by substantial evidence

in the record,  for concluding that Plaintiff's allegations concerning the severity of her symptoms

and impairments were not wholly credible.


4. **ALJ's evaluation of lay witness statements**

Plaintiff contends that the ALJ failed to provide the support required for failing to fully

credit the statements of her husband, Richard Costa.

I disagree.  An ALJ must provide reasons that are "germane" for discounting the

testimony of lay witnesses.  Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993).  Here, the

ALJ's citation to inconsistencies between Mr. Costa's statements and Plaintiff's satisfied that

requirement.

I note that the ALJ also concluded that, even if accepted, Mr. Costa's statements did not

"provide a basis for abandoning the residual functional capacity assessment" set out in his

decision.  Given the support for that conclusion in the record, any inadequacy in reasons the ALJ

cited as the basis for his assessment of Mr. Costa's credibility would constitute harmless error.

See, e.g., Tommassetti, 533 F.3d at 1042 (error harmless if inconsequential to ultimate determination of nondisability).

5. **Adequacy of ALJ's vocational hypothetical**

In order to be accurate, an ALJ's hypothetical to a VE must set out all of a claimant's limitations. E.g., Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984) (citing Baugus v. Secretary of Health & Human Services, 717 F.2d 443, 447 (9th Cir. 1983)). If the assumptions included in the hypothetical are not supported by the record, a VE's opinion that a claimant can work does not have evidentiary value. Id.

Plaintiff contends that the ALJ posed a vocational hypothetical to the VE that did not include all of her limitations and restrictions, and that the VE's testimony that she could perform certain of her past relevant work had no evidentiary value. I disagree. The ALJ's assessment of Plaintiff's RFC was supported by substantial evidence in the record, and did not reflect legal error. The hypothetical posed to the VE set out all of Plaintiff's limitations which were supported by the record, and the Commissioner's decision denying Plaintiff's application for benefits should be affirmed.

**Conclusion**

The Commissioner's decision denying Plaintiff's application for benefits should be AFFIRMED, and a judgment should be entered dismissing this action with prejudice.

**Scheduling Order**

This Findings and Recommendation will be referred to a district judge. Objections, if any, are due February 17, 2012. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 31st day of January, 2012.


       /s/ John Jelderks                   
John Jelderks
U.S. Magistrate Judge

FINDINGS AND RECOMMENDATION - 26